Good morning, Your Honors. Jim Mitchell for the Plaintiff and Appellant, Charles Merrick. Could you try to speak more into the microphone? Yes. Thank you. For the Plaintiff and Appellant, Charles Merrick. I think it's – Actually, it's still – Thank you. The sound volume is really low. Can you either keep your voice up? Can you get closer? And feel free to adjust – Yeah, adjust the mic, too. Is that better? Yes. Thank you. I think the essence of the case that we believe we proved against Hilton for age discrimination against Mr. Merrick was this. And here's why I believe that it should have gone to trial and should not have been handled at the summary judgment stage. And it's really this. Hilton said that they put together a nice, clean, fair plan to do this reduction in force that wasn't going to be discriminatory. And they had a nice plan for it, and they said they carried it out. And they said, boy, we had nothing against Mr. Merrick because of his age, and it was all financial, and we did it the right way. But I think as part of the opposing papers that we presented, we chipped away at that idea, that it was all fair and it was all legitimate. So was it the failure to follow the policies that you're relying on? That's your best tribal material issue of fact? I think that's the best tribal issue of fact there. But the tribal issue, as I understand it, isn't whether or not they follow the policy. It's whether or not you can infer from the way they treated the policy that there was age discrimination behind it. Ultimately, there has to be an age discrimination determination. Exactly, Your Honor. And I think that the – what the district – So it's kind of a two-step problem for you, then. It's, A, do they follow the policy, and, B, is that enough to prove a pretext, essentially? Well, I think it is, and I think here's why. And I'll start with the first thing, and this was a very specific part of the Hilton policy, and that was we're going to have two persons involved in this decision, and it's going to be the general manager. Where exactly do you have that, i.e., two and only two, as opposed to at least these two? Well, it's in the – I can't think of the exhibit, Your Honor, but it's in the first directive for the reduction in force where it states – General guidelines, that one? General guidelines where it states that the general manager and the local HR director for that hotel will be the ones that will participate in the initial decision to decide where the reduction in force is going to be. What's wrong with having the director of finance, Mr. Mahler, also as part of that, since the RIF was designed to examine cost reduction? Where's the harm? I think the harm is this, okay, with Ms. Mahler, very simply, is her job was on the line, too. And the fact that they included her in the decision-making process could be – could tend to show that her position was not considered because she was one of the people that was making the decision. And I think that's the importance of the policy for the reduction in force, why they said, why Hilton said, we're only going to have the general manager and the human resources director because those were the two positions that could not be eliminated. Every other position was supposedly up for elimination. And I think by inserting Ms. Mahler into it, that's what you're doing. And the point is this, is they didn't necessarily need her from a financial standpoint to do that. All that information about what each management employee was making and what each employee at the hotel was making was readily available. Is there a reason that Hilton proffered in this record as to why the finance manager needed to be a part of that process? They never gave a reason. Is there any record evidence that she had a negative impact on the decision-making process that would tend to support your claim of discrimination? Well, I think there is. What is it? And where is it? First of all, her position was never discussed as part of the reduction in force. I thought they said they went through every position. Well, they say they went through every position. Well, I know, so that's it. So what's the evidence that they didn't? Well, because she was there, and I don't think her position was discussed in the same standpoint that Mr. Merrick's position was discussed. So it seems to me that by keeping her as part of this decision-making process, I think a jury could infer that her position was not. To go back to what I asked, it really would be helpful if you could tell me what is the language in which they said who was supposed to participate in this. I'm looking for it and not finding it at the moment. The language in the guideline was that the general manager Oh, in HRD, make RIF determinations and meet with corporate function disciplines. Is that what you're talking about? No, it's the sentence before that that says that the general manager and the human resources director will Make RIF determinations. will make the RIF determinations. That's very specific to just have two people. And then the next part of it is then they'll go to the corporate level of the area where that person who works to make sure that it meets with the corporate aspect of it. And I think that's the next part of what I see is the problem here is the other part of the guideline, and that is did they in good faith meet with the corporate people that had to do with the property management and the capital improvements of this hotel. And the point there is that one of the issues that all of these folks discussed as part of the reduction in force was, Well, Mr. Merrick isn't doing the capital improvement project management anymore. So therefore, we don't have to worry about that part of his position at the hotel. This was a big part of their discussions. And what the three people said is that, well, the new this new owner, Remington, is the one who is handling the project management duties. Well, there was conflicting evidence from Mr. Merrick that he was continuing to virtually do the same thing on these capital improvements at the hotel that he had done before Remington had come into the picture. And the next part of it was is that he said, and I asked Mr. Blanken on his last name, now I don't know why, Mr. Duffy, at his deposition, and this was part of the record, he was asked questions about what did you think of the project management that was being handled by Remington? And he had complaints about it, and Merrick said the same thing. And the other important part about that is the assistant property manager, Cole, when he took over the job, he took over the same duties that Mr. Merrick was doing as far as this capital project management. Now, what's important about that is both of the corporate people, especially Mr. Gaines, and I can't think of the other man's name, they questioned whether the reduction in force by eliminating Mr. Merrick at that time was the right thing to do because we've got these capital improvement projects coming up. And that was met by Mr. Duffy telling each of them, Mr. Gaines and the other man, that wait a second, Remington is handling that now, not Merrick. Well, there was conflicting evidence that in reality Merrick was handling it. So I think what a jury could infer from that is that Duffy is actually misrepresenting what Merrick's job duties are at the hotel vis-a-vis capital improvements to justify the reduction in force of Mr. Merrick and not somebody else. Now, let me take it one step further, and I think this is a very important point. The idea was we've got to eliminate $131,000 worth of money that we're spending for an employee. Does that represent the 7% to 10% reduction? And it was undisputed. It was $131,000 of the management salaries plus the bonus. And what actually happened due to the reduction in force is Merrick's job was taken over by Michael Cole, his assistant. He got about a $6,000 raise, and then they had to hire an additional mechanic at $33,000 a year to come in and do the work that Mr. Cole wasn't going to be able to do anymore. Okay. So they missed their target. They missed their target by $40,000. But they did achieve a cost reduction, which was the ultimate goal, and there's nothing that says you have to meet or exceed it, and that if you don't that somehow leads to an inference of discrimination? Well, I think it could. Why couldn't a jury look at that and say, hey, you had a directive to reduce $131,000? And the important point there, Your Honors, is that the reason why they picked Mr. Merrick is they said, we can achieve that $131,000 by eliminating one position, and we can't do that with anybody else. We'd have to eliminate two positions, and I think that's the important point there. It's not so much that they didn't meet the target. It's the fact that the whole basis for their decision was we've got to pick Merrick because he's the guy who's making the most money. Well, the district court, I thought, did a nice job explaining the five reasons that the committee went through and then the three arguments that you raised and why those did not create a disputed issue of material fact. And on that point, they indicated they wanted to minimize the reductions because of earlier reductions, morale, and other reasons, so we're going to try and find one person that might fit the bill, so to speak. What's wrong with that? Well, there's nothing wrong with that at all. I think there's nothing wrong with it. What's wrong with it is the fact that Merrick was singled out because of his salary, and the fact is is that they singled him out and said, we're going to pick you as the one guy, which I don't have a problem with the fact that they only wanted to reduce one job. I agree with that. It was the result of what occurred that leads to the inference that it could be possibly discriminatory because they said, hey, we can only do him because we need to hit $131,000, and yet when all was said and done, they missed that by close to $40,000. I think that's significant, in my opinion anyway. Did you want to reserve the rest of your time for rebuttal? You have about three minutes left. You know, let me make one other point real quick. It's the idea that we didn't present our Profima-Fasci case because Merrick's job duties were not taken over by a substantially younger person. I think there was plenty of evidence that Cole stepped into his shoes in every way except for his title. Thank you. All right. Thank you. Good morning. May it please the Court, my name is Sherry Suica, and I'm here on behalf of the respondents. Mr. Mitchell raised three points that he believes shows pretext here. And that is the issue. So in other words, you're agreeing that there was, in fact, a Profima-Fasci case? We don't, but I think it doesn't matter because he hasn't Mr. Merrick has not produced substantial responsive evidence of pretext. So if you agree with me on that point, then it doesn't matter whether or not he met a Profima-Fasci case. Let's get to that last step of whether there's sufficient evidence viewed in his favor to demonstrate pretext. And he said his best tribal issue of fact is the fact that Hilton failed to adhere to its own reduction workforce guidelines. And how do you respond to those points? He called out three different points. And I think in the grand scheme of things, they're all minor. And if you, in the light most favorable to Mr. Merrick, if you agree that these are, in fact, deviations from the policy, they're minor and they do not lead to an inference of age discrimination. For instance, he says there was a misrepresentation of his job duties. But the record shows that Mr. Cole, when he did take over some of Mr. Merrick's job duties, did not work on the capital projects. Actually, Mr. Cole said that he took over all of his duties. He did say that. There was nothing that he was doing that Mr. Merrick had done that he wasn't doing. So he said he took over all his duties. Is that not right? He said he took over, within his knowledge, he took over all of his duties, but not the capital. Can you describe any functions Mr. Merrick performed that you have not taken over and performed yourself? No. Yes, but he says elsewhere that he didn't do the capital projects. Then he said, in terms of what he did do, he said, wait a minute, I thought he said directly the opposite. He said, wait a minute, I'm sorry, I'm somewhat missing it. But he said I did budgeting, I did capital projects budgeting, CapEx. That's what I did. And he said that the Remington people were there once every two weeks, and that he ran all the renovation projects, essentially, because they weren't even there. That's not my recollection of the record, that he ran all the renovation projects and Remington didn't. He said, coordinated the room renovation with the general contractor, water shutdowns, electrical shutdowns, and everything involved in the home renovation. He said, I oversee capital projects as they're done at the hotel and to Remington, but in their absence I oversee them, I'm the go-to person. How often are they there? Once every two weeks. That's what he said. Yes, in their absence. And Mr. Merrick said he did all of those duties. Let's take a step back. How does that show age discrimination? Well, it shows that the rate that they were giving, which is that they didn't really need Merrick anymore because he really wasn't doing this stuff anymore, doesn't seem to be borne out. I don't think anyone says that. I think they didn't want to lay off anyone. I think the record is perfectly clear that if the executive team had their way, no one would have been laid off. In fact, Mr. Duffy, the general manager, had testified that they had already been cut to the bone. And it's not that Mr. Merrick wasn't needed or that the position wasn't needed, it's that they had no choice in which was the one that they could work around the best. And Mr. Cole, even if he took all of Mr. Merrick's duties, he still had his own. So he was doing two jobs. And so I still don't see the inference of age discrimination there. What about the argument that your opponent led off with today, and that is he thought his best argument was there were only supposed to be two people, there was a director of finance, therefore there's some inference of age discrimination? That I don't understand either because the policy doesn't say it had to be only those two people. And as Your Honor pointed out earlier this morning, it makes sense to have the director of finance participate in that since it was a reduction in force due to financial reasons. Now, why would that lead to age discrimination? I think what Mr. Merrick says is that this means that Ms. Mailer's position wasn't on the table. The evidence doesn't support that. What evidence supports the fact that her job was also on the table? All the three decision-makers testified that all positions were considered, and there was nothing to dispute that. Now, one of the things that they did testify as well, in addition to Mr. Merrick's position, they discussed the executive chef because that person had been recently hired, and that person was 36. So, to me, I just don't see the inference of age discrimination. They were discussing Mr. Merrick's position, but also a younger person. I mean, to me, the two things that we're relying on here that seem at least odd are first of all this notion that the job duties have fundamentally changed because Cole seemed clear to say that they hadn't. By the way, what he said was, I deal with capital projects, budgeting, CAPEX updates. Why does that refer to capital expenditures? So that's what Cole said he was doing after Merrick left. But the second one is this notion of one thing they concentrated on a great deal was customer impact or customer interaction. It seemed, having stayed in a lot of hotels in my life, the notion that if you wanted to minimize the impact on customers, the thing you would eliminate is the person running the physical plant seems somewhat peculiar. I mean, the best way to lose a customer is to have a toilet that doesn't work. Yes, but Mr. Merrick was not the one fixing the toilet, and I understand your point, but to get rid of this, to eliminate the position that's the second most highest paid and there are other capable people to take that on. No, I'm not saying that. I'm saying that they represented, that they considered as a main factor, maybe the main factor, the impact on customer service. Didn't they say that? They did. And the way that they viewed it, or they explained it, all three decision makers, was that Mr. Merrick did not interact one-on-one, face-to-face with the customers, and many of these other management positions did. Not all of them, but many of them. And, of course, when somebody goes to a hotel and they have a problem or want some attention, service is important, and if you have enough people there to service the clientele, you're more likely to have a happy client or customer. Talk about the money issue. The second argument your opponent raised today was they missed the mark, and that, therefore, reflects something nefarious, I guess. Right. And that I don't see. There's no explanation as to what happened. If, in fact, Cole did get the raise that was recommended, there's no evidence showing that he, in fact, got the raise. The mechanic was hired. That's in the record. So they didn't achieve $131,000 cost savings. But what that leads to is then maybe this executive team needs to lay off someone else if that's what's determined in order to make that savings. And the record doesn't show whether or not that happened. Again, another main reason, other than the other two that I mentioned, the third main reason they gave was because they would only have to lay off one person. Right. And no one else was laid off. Well, yes, but you just suggested that they could have just laid off another person, but their whole motive was not to do all of the savings and only lay off one person. And they didn't do that. We don't know. But they accomplished substantially less than the savings. Well, I would disagree that it's substantially less, because we don't know whether or not Cole got a raise. And they got closer to their goal with eliminating. Excuse me. Excuse me. It doesn't really matter whether he got the raise. The management team, which was trying to run this, asked for him to get the raise. So they, therefore, in their calculation about what they were accomplishing, couldn't have meant to actually meet the target. Right. I understand your point. It's kind of looking at the proffered reasons and seeing whether there's evidence indicating or that would lead to an inference that those reasons offered were pretextual reasons. Right. Well, my answer to that is with Mr. ‑‑ eliminating Mr. Merrick's position, they were able to get closest to that target. With whatever measures they felt they had to fill in to make up for his absence, such as hiring the mechanic and giving Cole a bunch of other duties, they still reached ‑‑ were closer to their goal. It's undisputed that they would have had to have laid off two people if they went to anyone else other than Mr. Merrick. There's one issue that hasn't been discussed so far in the argument. The reduction in workforce guidelines indicates that the length of service has to be considered in determining which employees get laid off. Is there any evidence in the record that length of service was considered? It's on the sheets that they were looking at when they made their decision. No one could recall whether or not it was discussed, but it's there. So that's the best evidence you have. There's a printout that indicates when employees were hired, but no one specifically articulated that criteria as a consideration. Is that a fair summary of the facts? Yes, but Mr. Merrick was not the one with the most tenure. Mr. Cole was. Well, that's, I gather, because he was at that hotel the whole time but not with Hilton because it had been sold to Hilton. Yes, but ‑‑ In terms of the hotel, presumably he was the longest call game ever. At that physical location, yes, but I don't think it's unreasonable or discriminatory for Hilton to want to look to its own legacy employees in deciding what constitutes tenure or not. I don't think that's unreasonable or discriminatory. And I would say, you know, if we're nitpicking their business decision and whether they actually hit the targets that they said they were trying to make or that they said they were making, but if they wanted to, if they were motivated ‑‑ how these decisions are going to be made and if there's evidence that those guidelines weren't followed, then there are inferences to be drawn from that. I guess the question for me is whether those inferences rise to the level where plaintiffs should get a trial on these issues. And I would say the answer is no because I don't think those are enough to show age discrimination. And this is why, to achieve the 7% to 10% savings, which is one of the things that Mr. Merrick points out, they could have eliminated two other people who were 60 and 57. Mr. Merrick was not the only person in his 60s at that hotel. And, in fact, on that point, when you look at the statistics overall of this workforce, 61% of the entire workforce are over the age of 40. This is not a place that shows discriminatory intent against people because of their age. Over 30% are in their 50s and 60s. On the list that was considered, Mr. Merrick wasn't the only one who was 60. There were two others. And then there was one who was close. He was 57. So what Mr. Merrick has to show is those three people, they weren't really considering business judgment and what made the best sense for the hotel guests. What they were really doing is, well, let's just get rid of the older people. That's what he has to show. And none of these factors point to that. But what they actually did do was get rid of the oldest person except for the general manager, right? I'm sorry. I missed that. Is it accurate that he was the oldest person other than the general manager? No. There was one other person. The sous chef was 60, same age. I see. Okay. Anything further? And the banquet manager was 57. I would say that the only final comment I would make is that I understand the point. They're trying to look at what he said is you didn't follow your policy to the T. They substantially followed it. But does that constitute substantial responsive evidence of pretext? Pretext meaning that these three people are all lying and that they were really thinking about age and not business decisions. That's what he has to show. And to send this case to a trial on this record, I think, is really a waste of judicial resources. And on that, I'll stop. Thank you. Thank you. I want to talk about one point that Ms. Suica made, and that is she said they had no choice. The best person to achieve the cost savings and to work around was Mr. Merrick. Here's where the problem with that is. It's this. They didn't achieve the total cost savings with Mr. Merrick by reducing it because they had to hire somebody else and they had to give Mr. Cole a raise. They actually saved about $93,000. Now, what's interesting here is Ms. Mailer was making $99,000. She was the director of finance. Well, right, but we don't know whether if they had fired her, they still would have had to hire a helper, too. Presumably, the director of finance does something. That's the problem with these RIFs, right? These people act unless they're a dead wood, they're doing something. Well, you could put the assistant in charge of that, and what's important about the director of finance is one of the reasons that they made a big deal about it in their discussions was we were looking for people who interfaced with the customer, and it is undisputed that the director of finance wasn't one of the people that interfaced directly with customers. Mr. Merrick might not have either, but I think that he interfaced because his department was the face of the hotel. I think we've got enough here to get to a trial on this thing, and I'll leave it with this, and that is the length of service issue. All three of these people said we didn't discuss the length of service, we just had a list of the length of service. Well, what Judge Burns said is, you know, that's true, that they didn't discuss the length of service, but they had the list with the number of years these people had been there, so therefore it could have been considered. Well, there's two competing inferences there. One, you didn't discuss it means you didn't consider it, and the other is we've got a list of the dates of the length of service, and you did consider it. Which inference do you pick? I think at summary judgment you pick the one in favor of the plaintiff. Were they asked in deposition, the list in front of you has a factor of tenure. Was that something that you considered at all? Was that question asked of any of these three? That was not a specific question. The question was simply did you discuss the length of service? That was it. Thank you. I submit, Your Honor. Thank you very much. Thank you. All right. Thank you very much to both sides for your arguments. This matter is submitted for decision.
judges: Berzon, Nguyen, Zouhary